## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

WALTER J. ROACHE,

                                      Plaintiff,

        v.                                                  9:18-CV-825
                                                        (GLS/ATB)

BRIAN FISHER, et al.,

                                       Defendants.

WALTER J. ROACHE, Plaintiff, pro se
CHRIS LIBERATI-CONANT, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge. Plaintiff's surviving causes of action in this civil rights amended complaint involve defendants' alleged failure to provide plaintiff with copies of his treatment and rehabilitation records, violating plaintiff's First and Fourteenth Amendment rights. (Dkt. No. 42). Plaintiff alleges that he required these records to prepare his defense for the trial and hearings held to determine plaintiff's civil management status under Article 10 of the New York Mental Hygiene Law. (*Id.*).

Presently before the court is a motion for judgment on the pleadings filed by remaining defendants Connell, Nowicki, Licari, and Powell. (Dkt. No. 66). Plaintiff has responded in opposition to the motion. (Dkt. No. 74). For the following reasons, although the court does not agree with all of the defendants' arguments, this court agrees that dismissal of the amended complaint in its entirety is appropriate.

## I.    <u>Judgment on the Pleadings</u>

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Arias v. Hanocka*, No. 18 Civ. 10648 (GBD), 2020 WL 7261108, at *1 (S.D.N.Y. Dec. 10, 2020); *Doe v. Zucker*, No. 1:17-CV-1005 (GTS/CFH), 2020 WL 7024386, at *3 (N.D.N.Y. Nov. 30, 2020) (citing *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted)).  *See* Fed. R. Civ. P. 12(b), 12(c) and 12(h)(2). The motion for judgment on the pleadings is then treated according to the same standard as a motion to dismiss under Rule 12(b)(6).  *Cleveland v. Caplaw*, 448 F.3d 518, 521 (2d Cir. 2006).

To survive a motion to dismiss, the plaintiff must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Camarillo v. Carrols Corp*., 518 F.3d 153, 156 (2d Cir. 2008)(quoting *inter alia ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's factual allegations must be sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Id.* (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc*., 507 F.3d 117, 121 (2d Cir. 2007)).  When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations omitted). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d

150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)).  *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.   <u>Procedural Background and Relevant Facts</u>

In order to clarify the issues in this case, I will review the facts leading up to the

filing of this action.[1]  In 1977, plaintiff pled guilty to public lewdness resulting from two incidents that occurred within two months of each other. 2019 WL 4327271, at *1. (citation to record omitted).  In 1978, plaintiff was also convicted, after a jury trial, of two counts of first-degree rape and two counts of third-degree rape for offenses that occurred while plaintiff was serving a one-year probation term on the public lewdness conviction. *Id.*  Plaintiff was sentenced to 100 months to 25 years imprisonment on the four rape counts. *Id.*  In 1992, plaintiff pled guilty to first-degree sexual abuse for molesting two young girls who were picking berries. *Id.*  For those offenses, plaintiff was sentenced to 3 to 6 years imprisonment, to run consecutively with the 11 years of undischarged time remaining on plaintiff's 1978 rape conviction. *Id.*

On December 14, 2009, the County Court in Orange County (De Rosa, J.), designated plaintiff a level three sex offender pursuant to New York Corrections Law § 168-n,[2] and the Appellate Division, Second Department affirmed that designation on October 9, 2013.[3] *People v. Roache*, 110 A.D.3d 776 (2d Dep't 2013), *lv. denied*, 22 N.Y.3d 861 (2014).  Plaintiff's aggregate prison sentence was set to expire in 2010. 2019 WL 4327271, at *1.  However, prior to the expiration of plaintiff's sentence, the

---

[1] Some of these facts have been taken from the decision in one of plaintiff's previous actions in this court. *See Roache v. McCullough*, No. 9:16-CV-1069, 9:17-CV-574 (JKS), 2019 WL 4327271 (N.D.N.Y. Sept. 12, 2019) (denying petition for habeas corpus).  In their memorandum, defendants in this case have also cited to the facts in *Roache v. McCullough*.

[2] This law is known as the Sex Offender Registration Act ("SORA").

[3] In that decision, the court held, inter alia, that "irrespective of the points scored on the risk assessment instrument, the defendant was presumptively a level three sex offender." 110 A.D.2d at 777 (citation omitted).  The court also held that plaintiff had effective assistance of counsel at the trial level. *Id.*

4

State petitioned under New York Mental Health Law ("MHL") § 10 for plaintiff to remain civilly confined in state custody. *Id.* Plaintiff was assigned counsel from the Mental Hygiene Legal Services. *Id.* On April 23, 2010, the Supreme Court, Orange County found probable cause pursuant to MHL § 10.06 to believe that plaintiff would require civil management. *Id.* In 2012, a jury rendered a unanimous verdict that plaintiff suffered from a "mental abnormality," predisposing him to commit sex offenses. *See State v. Walter R.*, 118 A.D.3d 714 (2d Dep't 2014).

Plaintiff appealed, and on June 4, 2014, the Appellate Division set aside the 2012 verdict and ordered a new trial, holding that the State's experts improperly provided considerable hearsay, but failed to establish that the hearsay was reliable in violation of *State v. Floyd Y.*, 22 N.Y.3d 95 (2013). *Id.* at 715. Following a second trial in 2015, a jury found that plaintiff was "a detained sex offender who suffers from a "mental abnormality" as defined in MHL § 10.03(i)." *Roache v. McCullough*, 2019 WL 4327271, at *1. Following the jury verdict, the Supreme Court, Orange County held a "dispositional" hearing on September 16, 2016 and determined that plaintiff "is a 'dangerous sex offender requiring confinement' as defined by MHL § 10.03(e)." *Id.* Thus, the Supreme Court, Orange County granted the State's petition and directed that plaintiff remain committed to a secure facility for care and treatment. (*Id.*)

Plaintiff appealed the commitment order, represented by counsel. *Id.* He also filed a pro se supplemental brief, raising various additional challenges to the commitment. *Id.* On October 31, 2018, the Appellate Division affirmed the county court's finding that plaintiff is a dangerous sex offender requiring civil confinement.

*State v. Walter J.R.*, 165 A.D.3d 1267 (2d Dep't 2018).  While the plaintiff's appeal was pending in state court, plaintiff filed two petitions for federal habeas corpus relief, challenging his civil confinement and seeking immediate release, one in the Northern District of New York (9:16-CV-1069) and a subsequent case in the Southern District of New York (9:17-CV-574).[4]  The two petitions for habeas corpus were consolidated and assigned to visiting United States District Court Judge James K. Singleton.  Plaintiff raised a variety of challenges to his civil commitment, including ineffective assistance of counsel, relating to his attorney's alleged failure to obtain plaintiff's treatment records for use at the 2015 trial.[5]  *See* 2019 WL 4327271, at *8. (discussion of ineffective assistance of counsel claims).

Judge Singleton denied plaintiff's application for habeas relief, finding that notwithstanding plaintiff's failure to exhaust his state court remedies, his claims were meritless pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). 2019 WL 4327271, at *4 (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005)).  Judge Singleton denied plaintiff's claims on the merits and dismissed the petition "with prejudice." *Id.*

Plaintiff filed this action on July 16, 2018, asserting a variety of claims, many of which were transferred by this court to the Southern District of New York upon initial

---

[4] The original civil number of plaintiff's Southern District habeas corpus action was 1:16-CV-6966, and the number was changed to 9:17-CV-574 when it was transferred to the Northern District of New York.

[5] Plaintiff raised additional bases for ineffective counsel which are not relevant to the issues in this case.

review.[6] (Dkt. Nos. 1, 3). The court reviewed the remaining allegations and directed

defendants Commissioner Brian Fischer, Superintendent Susan Connell, Oneida

Correctional Facility FOIL Officer John Doe, FOIL Officer Chad Powell,

Commissioner Anne Marie T. Sullivan, Director Jeffery Nowicki, and Program Director

Sal Licari to respond to the following claims: (1) First Amendment access-to-courts

claims related to the 2015 jury trial;[7] and (2) due process claims. (Dkt. No. 3 at 10, 12-

13). On January 17, 2019, defendants Fischer, Sullivan, and Nowicki moved for partial

dismissal of the original complaint. (Dkt. No. 19). On April 12, 2019, I recommended

that the court grant defendants' motion to dismiss with leave to amend. (Dkt. No. 32).

On May 13, 2019, the court adopted my recommendation and afforded plaintiff

the opportunity to file a proposed amended complaint. (Dkt. No. 33). Plaintiff filed his

proposed amended complaint on July 31, 2019. (Dkt. No. 42). The court conducted an

initial review of the proposed amended complaint and determined that the remaining

claims were the same as those previously identified: access-to-courts and due process.

(Dkt. No. 47 at 6-7). The court then found that plaintiff had added sufficient facts to

---

[6] Plaintiff has filed various other actions in the Northern District of New York, some of which are related to his confinement at CNYPC. *See e.g. Roache v. Attorney General's Office*, No. 9:12-CV-1034 (LEK/DEP) (dismissed on March 26, 2015) (Dkt. No. 63 in 12-CV-1034). Plaintiff was afforded pro bono counsel in 12-CV-1034 for purposes of filing an amended complaint, but the resulting amended complaint failed to allege due process violations against any of the original defendants. Although new defendants were named in the amended complaint, the court found that the statue of limitations had run as against the newly named defendants. (Dkt. No. 56) (report-recommendation adopted Dkt. No. 63). Although plaintiff did not appeal the court's decision in 12-CV-1034, he filed three motions for reconsideration of the court's dismissal order. (Dkt. Nos. 63, 79, and 81). All plaintiff's motions for reconsideration were denied. (Dkt. Nos. 78, 82). Plaintiff has been attempting to challenge his confinement in CNYPC and his sex offender designation for many years, each time making different claims relative to the defendants' alleged conduct.

[7] The court found that any claims which accrued prior to July of 2015 would likely be time-barred unless plaintiff could establish a meritorious tolling argument. (Dkt. No. 3 at 11-12).

7

establish the personal involvement of defendants Connell[8] and Nowicki, but not of

defendant Fischer and Sullivan. (Dkt. No. 47 at 7-9). With these limitations, the court

ordered that plaintiff's proposed amended complaint become the "operative pleading."

(Dkt. No. 47 at 10). On September 14, 2020, defendants made the instant motion for

judgment on the pleadings, and plaintiff responded in opposition to the motion on

December 7, 2020. (Dkt. Nos. 66, 74).

## III.  Jurisdiction

### A.  *Rooker-Feldman*[9] Doctrine

#### 1.  Legal Standard

A challenge under the *Rooker-Feldman* doctrine asserts a lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation*

*and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). This doctrine divests the federal

court of jurisdiction to consider actions that seek to overturn state court judgments.

*Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7,

2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284

(2005). The doctrine also bars the federal court from considering claims, whether or

not raised in state court, that assert injury based on a state judgment and seek review

---

[8] The court noted that defendant Connell had not been served and directed that defense counsel assist in obtaining a proper address for service based on *Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997). (Dkt. No. 47 at 10). Although an address was obtained and a summons issued, it does not appear that defendant Connell was ever served because the summons was returned "unexecuted" on April 29, 2020. (Dkt. No. 60). However, defense counsel has moved for judgment on the pleadings on defendant Connell's behalf, and it appears that he represents her. Thus, the court will consider the motion on behalf of all the remaining defendants, including defendant Connell.

[9] *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

and reversal of that judgment. *Hensel v. City of Utica*, 6:15-CV-374 (LEK/TWD), 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Such claims are "inextricably intertwined" with the prior state court determination. *Id.*

As applied in this circuit, four prerequisites must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal court plaintiff lost in state court; (2) plaintiff complains of injuries flowing from the state court judgment; (3) the action invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered prior to commencement of the federal court proceedings. *Hoblock*, 422 F.3d at 85.

### 2.    Analysis

Defendants argue that the amended complaint should be dismissed based on *Rooker-Feldman* because plaintiff is seeking to overturn plaintiff's adjudication as a level-3 sex offender and civil commitment. (Def.s' Mem. at 4-6). Defendants cite to a portion of the amended complaint in which plaintiff alleges that in all of the trials - "2009, Level Hearing, 2012 Jury Trial, 2012-2013 Dangerous Hearing for SIST Release, and 2015 Jury Trial, and 2016 Dangerous Hearing for SIST Release, and 'all' said Appeals, the Prosecutors' entire case has either been cases that were not this plaintiff at bar . . . or that this plaintiff at bar went to prison and did not program, and went to Central New York Psychiatric Center, Marcy, New York and did nothing."[10]

---

[10] It must be noted that, although plaintiff continues to refer to all of his hearings and trials, this court found that all claims accruing prior to July of 2015 would be barred by the statute of limitations unless plaintiff established equitable tolling. Because the court's initial review of the amended complaint did not discuss the statute of limitations, I will do so below.

(Def.s' Mem. at 7) (citing AC ¶ 17). Defendants' argument implies that plaintiff is simply challenging the results of all of his previous unsuccessful hearings, together with their respective unsuccessful appeals, and therefore, *Rooker-Feldman* applies to deprive this court of jurisdiction to review the amended complaint.

First, to the extent that the amended complaint can be read as a simple challenge to the "results" of plaintiff's state court actions, defendants are correct. Under *Rooker-Feldman,* plaintiff cannot use this action to collaterally attack the state court judgments. However, the defendants in this action were not involved with any of the plaintiff's state court proceedings, and on initial review, this court interpreted plaintiff's complaint and amended complaint as alleging that, the failure to provide plaintiff with the documents he requested, adversely affected his state court proceedings. He is challenging the defendants' actions rather than the results of the proceedings. The "injury" did not flow from the state court judgment, but rather from the defendants' alleged actions which "arguably" violated his right to "access" the court. *See Austin v. Cuomo*, No. No. 1:20-CV-893, 2020 WL 7352664, at *5 (W.D.N.Y. Dec. 15, 2020) ("despite the fact that Plaintiff seeks a result in this court that is opposed to the one he received in his state court habeas petition, his claims are not barred by *Rooker-Feldman*") (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d at 87). The fact that the state court did not "remedy" the alleged injury does not require the application of *Rooker-Feldman*. *Id.* This is true whether plaintiff alleges his access to courts claim or a "due process" claim based on the defendants' failure to produce the records for his 2016 trial.

In this case, to the extent that plaintiff challenges the defendants' alleged failure to produce his facility records, such claim is separate from the state court's 2015 and 2016 judgments. Thus, neither plaintiff's remaining access-to-courts, nor his due process claim would be barred by *Rooker-Feldman*, except to the extent that plaintiff claims that he is "illegally detained" at CNYPC because of defendants' actions.

### B.    *Heck v. Humphrey*, 512 U.S. 477 (1994)

#### 1.    Legal Standard

Under *Heck v. Humphrey*, a claim that, if successful, would "necessarily imply the invalidity" of the plaintiff's prior state conviction is "not cognizable under § 1983" unless that conviction has already been invalidated, either by appeal or by being called into question by a petition for habeas corpus. *Heck*, 512 U.S. at 487. *Heck* applies to prison disciplinary proceedings, parole determinations and other proceedings which affect the plaintiff's length or duration of confinement. *See Wilkinson v. Dotson*, 544 U.S. 74, 78-82 (2005) (discussing the evolution of *Heck* and its application to various types of proceedings). However, in *Wilkinson*, the Court held that the plaintiffs[11] sought relief that would render invalid the "procedure" used to deny parole eligibility and suitability, which would not necessarily lead to a speedier release, but at best, would require new hearings at which the authorities might still refuse to shorten the plaintiffs' prison term. 544 U.S. at 82. The Court stated that "[b]ecause neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of

---

[11] There were two plaintiffs/petitioners in *Wilkinson*, one sought invalidation of the procedures used to determine parole eligibility and the other sought to invalidate procedures used to determine parole suitability. 544 U.S. at 78.

habeas corpus.'" *Id.* (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)).

### 2.   Analysis

As stated above, plaintiff's two remaining claims deal with the alleged failure of the defendants to provide him with his treatment and program records for use at his 2015 jury trial and 2016 hearing which related to his Level 3 sex-offender status and civil commitment.  The court finds that this case is similar to *Wilkinson*, except to the extent that plaintiff's "due process" claim may be read as alleging that plaintiff is "illegally detained" at CNYPC.  The defendants had no involvement in the hearings themselves, instead their alleged conduct involved a failure to produce evidence that could be used in court.

The information relative to plaintiff's programming at CNYPC is only one factor in the State's determination.  At best, a decision in plaintiff's favor would only allow plaintiff to have a new hearing with the documents in question as evidence.[12]  Thus, in accordance with *Wilkinson*, *Heck v. Humphrey* would not apply to prevent the court's consideration of the merits of this plaintiff's claims to the extent that they are related to the defendants' alleged failure to produce documents.  However, neither claim can survive the defendants' motion to dismiss.

## IV.   <u>Statute of Limitations</u>

### A.   Legal Standards

In Section 1983 actions, the applicable statute of limitations is the State's "general or residual [state] statute [of limitations] for personal injury actions[.]"

---

[12] This result assumes that plaintiff did not have the documents or that the defendants in this case actually prevented plaintiff from obtaining them.  The court will discuss this matter below.

*Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, a three-year statute of limitations applies for personal injury actions and thus to Section 1983 actions. *Id*. *See* N.Y. C.P.L.R. § 214(5). Although state law provides the relevant limitations period, federal law determines when a Section 1983 action accrues, which has been held to be the time "when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quotation omitted). *See Covington v. City of New York*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (quotation omitted) (same). "Thus, in determining when the statute begins to run, the proper focus is on the time of the [wrongful] act, not the point at which the consequences of the act become painful." *Covington*, 916 F. Supp. at 285 (quotation omitted).

### B.    Analysis

Defendants have included a statute of limitations argument in their motion papers. (Def.s' Mem. at 7-11). In Judge Sharpe's review of plaintiff's original complaint, he noted that, unless plaintiff demonstrated that equitable tolling applied, all the claims that accrued prior to July of 2015 would be time-barred. (Dkt. No. 3 at 11-12). The court stated that it was giving plaintiff "notice" and "an opportunity to be heard" prior to dismissal with prejudice based on timeliness. (Dkt. No. 3 at 12). When Judge Sharpe reviewed plaintiff's amended complaint, there was no discussion of whether plaintiff had established any basis for equitable tolling. Judge Sharpe's order found only that plaintiff had alleged sufficient personal involvement by defendants Connell and Nowicki in each of the two remaining claims. (Dkt. No. 47 at 6-7).

This court agrees with Judge Sharpe's original finding that plaintiff's claims accruing prior to 2015 are time-barred. The harm relating to the alleged failure to produce documents would have accrued, if at all, when plaintiff was not able to use the documents during a judicial proceeding and lost that proceeding. The proceedings prior to 2015 were years apart, and each alleged denial would have been a separate occurrence. In 2013, plaintiff was offered over 300 pages of documents by defendant Powell, and the Appellate Division reversed plaintiff's 2012 trial, giving him another opportunity to make his arguments. Before the 2015 trial, plaintiff's attorney subpoenaed documents from the Department of Corrections and Community Supervision ("DOCCS") in preparation for plaintiff's trial, and in 2016, plaintiff was informed that he had been approved for additional documents that he sought. (Pl.'s Ex. A-C). While plaintiff alleges that these documents were insufficient, he was told in 2016 to contact defendant Licari, who does not seem to have been involved in prior requests. (*See* Dkt. No. 42 at ¶ 15, 18, 22 & Ex. C) (plaintiff was told by Nowicki and by T. Fazio to write to Licari in 2016). Thus, the plaintiff cannot establish that he was subject to a "continuing violation."

Plaintiff's amended complaint did not address any of the statute of limitations issues or attempt to establish equitable tolling for any of the claims accruing prior to 2015. Plaintiff's response to the defendants' motion addresses the statute of limitations issue by alleging that the defendants' violations are "ongoing" from 2009. (Dkt. No. 74 at 4-5, 11). However, as stated above, the fact that plaintiff may have made multiple requests to different individuals does not establish a "continuing violation" for

purposes of the statute of limitations.  Thus, any conduct occurring prior to 2015 would be time barred, leaving the court with plaintiff's claims that his constitutional rights to access to courts and to due process were violated with respect to any proceedings occurring after July of 2015.  This court finds no basis for equitable tolling.  Plaintiff had the opportunity at the conclusion of each proceeding to challenge the alleged inability to present the appropriate evidence.

## V.    **Access to Courts**

### A.    **Legal Standards**

The First Amendment provides, in relevant part, that "'Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for redress of grievances.'" *Rosado v. Maxymillian*, Nos. 9:13-CV-359, 9:15-CV-489, 9:15-CV-1327 (TJM/TWD), 2020 WL 6384768, at *10 (N.D.N.Y. Oct. 30, 2020) (quoting *City of New York v. Baretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008) (quoting U.S. Const. amend. 1)).  This right includes a right of access to the courts, and applies to prisoners and detainees. *Id.* (citing *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (citing *Bounds v. Smith*, 518 U.S. 343, 350 (1996)).  The standard for access to the courts is also the same for civilly committed persons, like plaintiff. *Id.* (citing *Lane v. Carpinello*, No. 07-CV-751, 2009 WL 3074344 at *32 n.26 (N.D.N.Y. Aug. 31, 2009) ("Although plaintiff was not a prisoner but involuntarily committed at CNYPC at all times relevant to this claim, the right of access to court evolves from the First Amendment and thus the analysis is the same in either context."); *Samuels v. Stone*, No. 98 Civ. 776, 1999 WL 624549 at *4 (S.D.N.Y. Aug. 17, 1999) (civilly committed

"plaintiff unquestionably enjoyed a right of access to the courts during the period of his confinement"); *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 WL 2543573 at *6 n.6 (S.D.N.Y. June 25, 2008) (treating a First Amendment free exercise claim by civilly committed person the same as one by a prisoner); Aiello v. Lamitie, No. 16-CV-53, 2020 WL 918989 at *8 (N.D.N.Y. Feb. 26, 2020) ("The analysis for a denial [of] access to the courts claim is the same for both civilly committed individuals and prisoners.").

As the Supreme Court explained in *Bounds*, this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  However, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance," nor did it "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Instead, "the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" *Collins v. Goord,* 438 F. Supp. 2d 399, 415-16 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 355).  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

The courts have recognized two variants of claims for denial of access to courts: first, "forward-looking claims," where "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and second,

"backward-looking access claims," which cover "specific cases that cannot now be tried (or tried with all material evidence)" due to the actions of state officials. *Jean-Laurent v. Lawrence,* No. 12-CV-1502, 2015 WL 1208318, at *3 (S.D.N.Y. Mar. 17, 2015) (citing *Christopher v. Harbury,* 536 U.S. 403, 413–14 & n. 11 (2002)).

"The Second Circuit has emphasized, however, that the viability of [backward-looking] claims is far from clear, pointing out that the [Supreme Court's] *Harbury* decision was careful not to endorse their validity." *Id.* (quoting *McNaughton v. de Blasio*, No. 14 Civ. 221, 2015 WL 468890, at *12 (S.D.N.Y. Feb. 4, 2015) (other citations omitted).  Although the availability of a backward-looking access claim remains uncertain in this Circuit (*see Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) ("The viability of backward-looking right-of-access claims is far from clear in this Circuit . . .")), the existing case law suggests four elements:

> First, the plaintiff must identify a nonfrivolous, arguable underlying claim.  Second, the plaintiff must establish that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.  Third, the plaintiff must show that the defendant's alleged conduct was deliberate and malicious[13].  Fourth, the plaintiff must demonstrate that the defendant's actions resulted in an actual injury to the plaintiff.

*Jean-Laurent v. Lawrence,* 2015 WL 1208318, at *4 (internal citations and quotations omitted).

## B.    Analysis

---

[13] *But see Desmarat v. Artus,* Civ. No. 08 Civ. 977 (DNH/RFT), 2011 WL 1564605, at *7 (N.D.N.Y. Mar. 25, 2011) (questioning whether 'maliciousness' is a proper element of a backward-looking access to court claim, based on Second Circuit jurisprudence).

Plaintiff in this case cannot establish a denial of access to courts. This is clearly a "backward looking" claim. To the extent that such a claim exists, a review of plaintiff's multiple challenges to his sex offender status shows that he had substantial access to the courts, and that these defendants did nothing to prevent that "access." Plaintiff was represented by counsel at most, if not all, of his state court proceedings as provided for by New York State statutes. In fact, as outlined above, in 2014, represented by counsel, plaintiff obtained a reversal of his first trial on grounds other than the lack of treatment records.

As stated above, *Bounds* creates only the "right to have prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds, supra* at 828. Plaintiff's appointed counsel afforded him "access to courts." The alleged denial of documents by these defendants did not prevent plaintiff from challenging his sex offender status or dangerousness determination. Plaintiff has already unsuccessfully blamed his attorney for failing to obtain the records that he alleges would have made the difference in his state court proceedings. The state rejected his argument,[14] and Judge Singleton found that plaintiff's counsel was not "ineffective" because he used the information regarding plaintiff's programs during the

---

[14] *State v. Walter J.R.*, 165 A.D.2d at 1268-69 (plaintiff's appeal from the 2015 jury trial and September 2016 hearing). Although the state court did not mention the records specifically in its affirmance, the court stated that all of plaintiff's other claims, including those in his pro se supplemental brief were either unpreserved or lacked merit. *Id.* In his habeas corpus decision, Judge Singleton did cite the claims that plaintiff raised in his supplemental brief in state court. 2019 WL 4327271 at *1. One of those claims was his ineffective counsel claim, based on the failure to obtain the plaintiff's educational and treatment records. *Id.*

trial.[15]  2019 WL 4327271, at *8.  Plaintiff cannot show that the defendants failure to "produce" his requested documents prevented him from bringing or pursuing the various challenges to his status.  The fact that he "lost" his case, alone, does not create an access to courts claim. *See Olivia v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015) (defendant must have taken or been responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim).  The defendants' conduct must have caused the plaintiff's case to be dismissed as untimely or must have been so severe as to render "hollow" his right to seek redress. *Sousa*, 702 F.3d at 128. Plaintiff has established neither.

A claim could arise if public officials withheld key facts that would form the basis for plaintiff's claims of relief. *Id.*  However, this claim is available only if the judicial remedy was foreclosed by the alleged cover-up. *Id.*  Although plaintiff in this

_____

[15] Plaintiff has included the subpoena for the records in his amended complaint. (Pl.'s Ex. B). Judge Singleton stated as follows:

> Roache also contends that Siper failed to timely seek records that demonstrated Roache's satisfactory completion of educational and treatment programs during his confinement. To the contrary, Roache admits on reply that Siper presented to the jury evidence demonstrating that Roache completed various courses and certificates regarding anger and aggression management. Docket No. 28 at 9. Moreover, the record demonstrates Siper's familiarity with the programs Roache completed and that Siper made use of them at trial. See Docket No. 24-1 at 156-57; 166-67; 191-94; 206-14; and 220.

Thus, the defendants herein did not prevent plaintiff's "access to courts" even if they failed to provide plaintiff himself with the specific documents that he says that he required - a finding that this court does not make.  To the extent that plaintiff argues in his response to the defendants' motion that these records were not presented to "any court" or in conjunction with "any appeal," (Dkt. No. 74 at 4), the case law does not support this argument. Whether the documents themselves were considered or whether the information in those documents was considered, plaintiff still had access to the court and had the information he needed to make his arguments for release.

case is alleging that the defendants failed to produce documents, plaintiff and his attorney were well aware of the programs that he completed.  In 2013, and in 2016, plaintiff was given the opportunity to obtain documents, and to the extent that he claims that certain of the documents were not produced, this failure did not preclude plaintiff from making the appropriate argument at trial or on appeal.  Thus, plaintiff cannot establish that he was denied access to courts by these defendants.[16]

## VI.    Due Process

### A.    Legal Standard

In order to state a valid Section 1983 claim for violating the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege he or she was deprived of life, liberty, or property without due process of law. *See Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). "Involuntary confinement, including civil commitment, constitutes a significant deprivation of liberty requiring due process." *Abdul-Matiyn v. Pataki*, No. 9:06-CV-1503 (DNH/DRH), 2008 WL 974409, at *10 (N.D.N.Y. Apr. 8, 2008).  "When a person's liberty interests are implicated [by involuntary commitment], due process requires at a minimum notice and an opportunity to be heard." *June v. Blair*, No. 9:09-CV-323 (FJS/TWD), 2012 WL 1048463, at *7 (N.D.N.Y. Mar. 28, 2012).

### B.    Analysis

To the extent that plaintiff has a "due process" argument relating to the "denial"

---

[16] The court notes that plaintiff continues to mention the defendants' alleged violations of New York's Freedom of Information Law ("FOIL").  However, plaintiff's FOIL claims were dismissed in Judge Sharpe's initial review of plaintiff's original complaint. (Dkt. No. 3 at 9-10).

of these records, the claim fails for the same reasons cited above.  Plaintiff certainly had the opportunity to be heard several times regarding his claims.  Assuming that at any point after 2015, defendants failed to produce or prevented the production of the records requested by plaintiff, plaintiff was not prevented from having the opportunity to be heard regarding the effect of these records.

## VII.  Opportunity to Amend

### A.    Legal Standard

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015)  (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000.  In *Cuoco*, the Second Circuit held that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint."

### B.    Application

In this case, plaintiff has already amended his complaint once, and this court finds that it would be futile to allow plaintiff another chance to amend because plaintiff cannot establish that the defendants' actions denied him access to the courts or denied him due process with respect to his sex-offender status or confinement at CNYPC. Thus, the complaint may be dismissed on the pleadings without the opportunity for amendment.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion for judgment on the pleadings (Dkt. No. 66) be **GRANTED**, and that plaintiff's amended complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: February 8, 2021

Hon. Andrew T. Baxter
U.S.  Magistrate Judge